Good morning, ladies and gentlemen. We're pleased to see you all here. We're very happy to be at the University of Colorado. We are, as many of you know, a national court, and our legislative history suggests that we sit outside of Washington from time to time. So once a year we decide to go to another city, and a year ago we accepted invitations from various Denver entities, including yourself, I'm sure, and we decided to come here. We're very pleased to be here. We have four cases on the calendar this morning indicating the diversity of our jurisdiction. The first case is a patent case from a district court. Then we have a customs classification case from the Court of International Trade. We have a patent office appeal, and we have an appeal from the Merit Systems Protection Board, a government employee case that is pro se and submitted on the briefs and therefore will not be argued. We're pleased to have sitting with us today Judge Marsha Krieger, district judge from the District of Colorado. I could refer to her as sitting as a visiting judge with our court, except she is a judge here and we're the visiting court. In any event, we're pleased to have her with us. The first case is stored value versus card activation, 2011-15-28, Mr. Peterson. May it please the Court. Good morning, Your Honors. Mark Peterson on behalf of the appellant, card activation. Your Honors, this is a case that involves the prepaid card industry and specifically a method for processing purchase transactions, which are efficient, effective, and in a secure manner. The method utilizes three codes with three distinct functions, the first being a customer code. Well, that's what your claims, your new claims 20 and 29 recite, three codes, but where are those three codes set out in the specification? Your Honor, the three codes are in the, first of all, they are in the, they have always been in the claims of the patent. You will find the customer authorization code and the clerk authorization code in the independent claims 1 and 10. You will then find those codes also in the defense. That's two. That's two, and the general authorization code you will find in claims, original claims 20 and 29. But that's one. With one code, exactly. But where in the specification or in original claims are three of them set out together? Your Honor, I believe that there is a section where there is the identification of the terminal ID. You will see that that is. Could you point to a column in line? Because I see reference to clerk authorization codes and customer authorization codes, but I don't see three together. That would seem to be the issue with respect to the amended claims that recite three codes. And, Your Honor, the column in line at the terminal ID is column four at line approximately 14 or 13. The, and I believe Your Honor is correct, there is, as to a. That's a good concession to make. What's that? That's a good concession to make. There is not in a preferred embodiment all three, but I don't think that is necessary under the law that there be an exact. Beyond just a preferred embodiment, I mean, there's nothing in the specification that discloses a terminal ID as an authorization code. We don't know how an ID is entered, how it functions. Your Honor, the experts, those skilled in the arts, testified, specifically Dr. Grimes, who was a card activations expert, testified that the terminal ID to him, as one skilled in the art, clearly identified a code which is entered, that is a series of numbers or letters which establish the communication link between the register and the host, and indicated that no communication could indeed take place without it. In fact, the concessions were made by SVS's expert, also indicating that without a code that, and it just makes sense, without a code which identifies which register is calling and what merchant is calling and what particular register is calling, that there would, that any communication could take place. Certainly the host, as we know, has to return information indicating that that card is accepted or not, or whether there is sufficient value on those cards. And obviously that communication link has to be established. Those skilled in the arts identified that indeed it was the, at least in the specification, the terminal ID disclosed that to him. And that's not surprising at all, especially in light of the fact that the Murphree patent, if I'm pronouncing that correctly, the Murphree patent, which is on the face of the 859 patent, also identifies a terminal ID and specifically sets forth it. So when the claims were amended, 20 and 29, and the term, the general authorization code was replaced with two different codes, one entering a customer authorization code, the other entering a clerk authorization code. So those were the two amended steps, and what was deleted from there was anything having to do with the general authorization code. But when the independent claims were amended, the replacement was not made. So you ended up with three different codes, and your specification only goes to two. Your Honor, our position is that there have always been three codes identified in the claims of the patent, and they're identified in the specification as Judge Lowry put on that, not maybe altogether in a specific embodiment. However, they were all there, and I believe that the claims 20 and 29 originally indicated that with a dependent claim, that you could have a code, theoretically, which would perform both of the important functions of the general authorization code, which the original examiner and the re-examiner had found, was simply to start the system or to make the system available for use. And then, but continued to indicate that that clerk authorization code was the novel subject matter. It was in the original examination and was in the re-examination as well, found to be the novel subject matter. What about the MT manual as prior art, anticipatory prior art? Your Honor, the microtracks manual, we believe, obviously, is not in any way, shape, or form prior art. And I want to make sure I'm very clear with this, is that what the court references and what SBS references is two different versions of microtracks. There is the version 7 reference, which is before you. There is reference within the opinion of the district court. Which one is copyright 1994? That is the version 7, because version 2 is not in the record at all. We have no idea what version 2 says or doesn't say, except based upon what Mr. Leineck testified about. And there's one that says copyright 1995. There is, that version 7 has both copyrights on it. There is a 94 copyright and a 95 copyright. So the inference that we should draw, or the trial court drew from that, is that there were prior versions, correct? Well, I think that's the inference that was drawn, certainly. And that's corroborated, is it not, by the testimony of the witness? No, I don't think so, Your Honor. I think that what you have is, if you look at, obviously, to be a printed publication under 102, you have to have both a printed document as well as evidence that it was publicly disseminated. With respect to version 2 alone, what you have is, do you have a printed document? The answer is no. There is no version 2 in the file. Do you have evidence at all that it was disseminated? Well, you have Mr. Leineck's testimony that he believes that version 2, whatever it is that we can't see, was disseminated. Under the in-ray, the barbed wire and its prodigy, is there any corroboration with respect to version 2? That is, I mean, it's not usually difficult. The ubiquitous trail that you find in any type of transaction, that is, invoices, emails, letters, bank statements, I mean, there's a whole host of things that could be shown that have dates on it that show it. Is there any corroboration with respect to version 2? And the answer is no, none. And when you get to version 7, then, you ask the same question. Is there a printed publication? Well, there is. There is a printed publication that exists, and it's the version 7. Is there any testimony that version 7 was in any way disseminated prior to the critical date or the application date under A? And the answer is none. Mr. Leineck never testified, nor is there any comment by the Court or SBS that version 7 was in any way ever disseminated to the public. Doesn't a copyright notice stand for something, for corroboration, number one? It's not just someone's say-so. You've got a printed document that has a date on it, and wasn't there testimony that it was disseminated? Your Honor, I think that the copyright, I mean, as in the Lister case, which was decided by this Court a couple of years ago at this point, I think it may evidence that the document was printed in 94 or 95, but it certainly has no effect on whether it was disseminated. That is, was it sent to anybody? I mean, there's several district courts. I'm not sure this Court's ever answered that exact question, but certainly there's been a number of district courts that have answered this exact question and said, yeah, absolutely, that the copyright may give you some corroboration that, yeah, there's a printed document before the critical date, but not sent to anybody. This is an interesting situation because you have both the oral testimony of a witness and you have a document, and neither exactly match, but they tend to corroborate each other. Now, none of the cases that I reviewed that you cited to have precisely that factual situation. They might have oral testimony or they might have an individual document, but none have this kind of situation. Did I overlook something? No, I don't think so, Your Honor, because I have yet to find a case where there has ever been a finding of reference as a piece of prior art that invalidates the United States patent under a clear and convincing standard without the document ever even being in the record. I know of nothing like that. And so when you take that combination, when you take a combination of version 2 and 7, go back to the test. Is there a printed document? Well, there is. There is a printed document in the combination. That's version 7, but is it really the document that we're looking at that was prior? Well, no, there isn't, but let's give them the benefit of the doubt and say, okay, yeah, there is a printed document, but is there any evidence as to the dissemination besides the naked testimony of Mr. Leineck, who says that I disseminated version 2, whatever it might be? And the answer is there's absolutely no corroboration that that version 2 or 7 was ever disseminated to public. All they point to is this copyright date that's on a version 7. Well, the copyright gives you, as indicated just a second ago, I don't believe that has ever provided any evidence that that document was ever actually sent to anybody. And one thing I want to point out is this isn't a surprise to anybody. There was a subpoena issue at the time Mr. Leineck's testimony was given many years ago at this point, but the subpoena specifically asked for, do you have any information, any and all information, that would show that these documents or this document, this microtracks manual, was sent to anybody? And his response when questioned about that was specifically, I don't have any documents at all except this version 7, and not only that, I went to my customers and they don't have anything else besides version 7 either. Mr. Peters, do you have a record? Well, if you want to save some time to rebuttal, you're into that period. You can use it. I will save it. Thank you, Your Honor. Mr. Fish. Good afternoon, Your Honors. May it please the Court. My name is Alan Fish. I'm joined with my colleague Bill Sigler. We have the honor and privilege of representing stored value here today. I'd like to begin by addressing a few of the questions that were already posed by the panel. First thing I'd like to do is touch on what we just were hearing dialogue about, which is whether or not the microtracks version 7 manual constitutes prior art. It does, and it's unequivocal that it does. There are two ways to break this down. I'd like to begin with the statute. Was this issue conceived below in any way? No, sir. Not by me, sir. Not by SVS. In fact, there is testimony, and I'd like to call your attention to A9065, which is the deposition of Mr. Wendick himself. There, on line 3 of the transcript of his deposition, he references Exhibit 4. Exhibit 4 is version 7 of the microtracks manual. He indicates in the question, and all of these stores that you sold the software to received Exhibit 4, which we now know is version 7 of the microtracks manual. As well, is that correct? Answer from the witness, yes, correct. There he validates what we need to see out of 102A. 35 U.S.C. 102A, in particular, the printed publication component,  the obligation under 102A, printed publication, is that the publication occur and exist before the critical date and that it be disseminated. What about the dissemination? Because looking at the record, the manual was provided to customers and stores and kind of bundled with the software that was provided to stores. Is that sufficient for public dissemination? Would somebody that's not privy to those transactions have access to that document? By public dissemination here, Your Honor, it is sufficient, and it's sufficient because we don't define public in the generic sense to mean anybody off the street. We define it to mean people outside of the corpus of individuals that would have knowledge or who have authored the document. So the moment this goes out to a store, it begins to meet that test for public dissemination. In other words, if a thesis in a foreign university is open, that meets the test, doesn't it? So if this is available with the subject matter when it's purchased, you're saying that would meet the public availability requirement? Your thesis example, Your Honor, as you know, is one of the classic examples in the printed publication dialogue. Here, I think we go even further than anything like that, though, quite frankly, because we're talking about software that's substantial. The manual itself was 381 pages. So this is not a piece of software that necessarily just gets put into a machine and goes from there. There has to be a configuration component to it. There are other aspects to the point-of-sale register, the cash register, that have to be involved in this process. So this is not like just loading something on the PC and throwing the manual in the desk drawer or the closet. We have people who needed to understand how to configure the system to be able to use it, and we know it was used. So those are the two obligations we have under 102A. This red herring of corroboration has always been an interesting one to me because corroboration is not required under 102A. The idea of corroboration generally in 102, as we know, speaks to the idea of a self-interested party identifying, for example, that they have a prior use defense or an on-sale bar defense that exists well before anyone would be able to demonstrate it. Under that circumstance, under that rubric, we invite, we demand, in fact, under the case law that that be validated through some other form of evidence. That's not what's required under 102A. But even if it were, even if that were the standard, which would be setting a very high standard for printed publication, if that were the new law that were to be made in this case, that test is still met because we have the corroboration of the gentleman who wrote the manual, who was a co-founder of the company, and who wrote the software. You're saying the date on the document wouldn't be enough? I think that the date itself is self-authenticating, Your Honor. I'm suggesting if this court requires a new standard of establishing corroboration where it didn't previously require it, that even under that test, which would be a new test, Your Honor, that that standard would be met by the case here. The facts at bar suggest and teach that we've gone well beyond anything that would be necessary under 102A. What about the written description issue? Mr. Peterson said all three authorization codes are in the specification. Your Honor, the word terminal ID is in the specification, but terminal ID is not a third authorization code. Terminal ID, as was pointed out to Your Honor, is on column 4, line 13. That appears once and only once in the entire patent. When we understand what terminal ID's purpose in the patent is, it's to identify which cash register the data is being sent from. That's an important piece of data because, say, in a multi-lane, a multi-checkout lane environment like a Safeway or a Target, a Walmart, any big grocery store where there could be 10, 20, 30 different lanes, those will all have separate cash registers, which are really computers now. They all need to be uniquely identified so the transactions flow back and forth to the person who's actually standing at that register. That's what terminal ID identifies. Is general authorization code generic to clerk authorization code and customer authorization code? General authorization code is the set that defines those two elements, Your Honor. It is not an independent element. What is the meaning of the claims which recites three of them as if they're different? I don't believe that they are different, so I start with that, Your Honor. I believe that what those claims are seeking to do first in the amendments was to try to get past the prior art. That was what it looked like their first attempt was. It was a calculated maneuver, I believe, Your Honor, where they thought they'll live to fight again another day, with today being that other day. That if they can just get out of the patent office with something, they can keep their case alive and then argue the point later that there's no support in the specification for the amendment they made. And so under that environment, terminal ID can't be it. Terminal ID is a static number. It doesn't serve the purpose, which we know from the claims themselves that the general authorization code is to initiate communication with the host. A terminal ID doesn't do that. Now, we have testimony that's, I think, very interesting, Your Honor. So initiating communication is different from authorizing access to a certain base, which is what the second and the third limitations are. Well, those limitations then speak to what happens as a result of being able to correctly identify the code numbers, right? Now, you need step one. In fact, the Microtracks Manual speaks about this, that the first real step, Chapter 2 of the Microtracks Manual speaks of this, that the first real step is to have the checker ID authorized. We don't want just anybody walking up to a cash register and being able to open it. It would not make a commercially viable product. Microtracks Manual understands that and says step one is to make sure that there's a checker ID so that the checkout process can occur. We don't just want people stepping on the cash register. But this idea of terminal IDs serving in a capacity different than what the patent describes is a new one, and I'd like to call Your Honor's attention to a couple places in the appendix, which I think will elaborate with great specificity what we're seeing today, that we understand that when we're talking about terminal ID, again, CART activation today says the terminal ID initiates communication with the host. That's what they say today. That's what they say in their papers. That's their current position. But if we were to look at their expert's deposition in this case, Dr. Grimes, and his deposition's excerpt can be found at A9851, A9851. What does he say about terminal ID in his deposition? He says, this is Kat's expert, quote, does not cause anything to happen, including calling a host, end quote. There is a near universal acceptance that terminal ID is not anything that forms the basis of this specialized code that we're being told by Kat's lawyers today. It's not agreed to by Kat's expert. In other words, it's not generic of the other two. It's a separate communication. Terminal, I want to understand your question. Do you mean terminal ID or do you mean the authorization, general authorization code? Are they different? General authorization code has been given the definition terminal ID. It's the only definition that's been given, an explanation by Kat. That is an improper definition, that there is no such thing as the terminal ID serving in that capacity. We're back to the set subset issue I referenced earlier, that the only authorization codes that the patent speaks to are the two that it identifies. Those two, by the way, are also taught in the microtracks manual. What we're really looking at here is a patent that has two codes, not three. Certainly, in the first half of the patent, claims one through 19, there isn't even an argument that there are three codes. That is wedged in through the process of the reexamination where it's rewritten, where say claim 21 moves into claim 20, 32 moves into claim 29. Those are pushed together, squished out in hopes that it passes through at the PTO. In your view, the reexamination claims 20 and 29 destroyed the patent under written description? That's correct, Your Honor. It sounded like it was also your view that if they hadn't entered these claims, they would have lost on prior art. That's right as well, Your Honor. In fact, you heard it referenced a little earlier, the Murphy patent, which is also a patent of record and a piece of prior art that was identified by our expert during the litigation, also discloses a terminal ID. If this court were to conclude that terminal ID were in fact a third code, the Murphy reference taken in conjunction with the microtracks manual would have all the teachings necessary to invalidate those claims. Now are all the contested claims in your view invalid under both grounds or one ground applies to some and the other to the others? I believe, Your Honor, they all are applicable with respect to the prior art argument. With respect to the written description argument, only the back half of the claims, 20 and 29, suffer from that defect. That was a defect introduced through the reexamination process. Those were the independent claims? Yes, sir. Are there any further questions on these or any other issues? I'll be happy to answer them. No one ever gets black marks by not using up all their time. Mr. Peterson, you have under four minutes of rebuttal. Thank you, Your Honor. With respect to the issue of whether or not corroboration is required under 102, I think the Finnegan case, and if I remember right it's a 1999 case or thereabout from this court, clearly said that corroboration is required with all 102 articles. That was dicta, wasn't it? I don't think so, Your Honor. Even if it was, it seems to me it should be the rule of law due to the fact that if you don't have a requirement of corroboration, and if you were to sustain a case like this, you would open up a huge avenue for what isn't prior art to be prior art. Because what you have is individuals saying, look, I have this document and I know it's not prior to the critical date of this patent, but I know, trust me, I sent this to somebody else. I sent this before the critical date or a version that was something like this. Right? And then, which is exactly what we have in this case, then you'd ask that person, well, do you have any information that evidences that, that corroborates that you actually sent it? And the answer, according to SBS and I submit to the court here, is no, but no need. How does that view fit with the hypothetical that Judge Lori posed about the thesis? Your Honor, I think the thesis, if I remember Lister and some of the thesis cases, I think those cases turn on whether or not they're actually available. I mean, that is, are they out there in the library and are they accessible? But there's no corroboration, I'm sorry. With an index. With an index, I think that's right. I think those cases have turned on whether or not they're available. Now, you know, look, if there was a piece of art. But there's no necessity to have corroboration that somebody actually viewed the document or. . . No, Your Honor, I don't remember, I certainly don't remember the case, but I certainly remember something to the effect of decisions that so long as it's available to the public. I wonder to what extent you're asking. to rewrite the statute. Not at all. I mean, on this particular case, on corroboration, on a printed publication that isn't a patent, that isn't otherwise shown as being out there and actually sent, I don't think this is any different than the barbed wire case which had, you know, in 18 whatever it was, that had a number of people saying, look, I remember, I think, I remember seeing that out there in the public before. And there are a number of cases that have followed that, that said, trust me, I think I saw that out there before the critical date. And this court, given the clear and convincing standard, and I think has always been proper in saying, no, you've got to show more than that. You've got to show with some other document that that thing was sent. And as I stated before, that's usually not a difficult burden if it was actually done. I mean, you know, we're talking 94, 95, I mean, there's all sorts of things. The court has called it a ubiquitous trail of commercial transaction, and I think that's dead on. There should be a number of documents that would show that. Now, apart from our argument, did my review of the record indicate that, that you did not bring any evidence showing that the manual is not a printed publication? Right. We did not bring anything forward, mostly on the basis that Mr. Leineck had already provided the evidence that there was no, you couldn't, I mean, he testified that he had actually gone to his customers and said, do you have any other records? Pursuant to the subpoena that I talked about before, and his testimony was, my customers didn't have it either. So, I mean, it doesn't do us any good to subpoena his customers and ask them, gee, are you sure you don't have anything? Or, gee, should I go to his non-customers and say, have you ever seen version two? I mean, of course, there was nothing to do at that point, except somehow try to prove the negative, which, you know, certainly can't be done. There was nothing to evidence at that point. So all the evidence that, from your perspective, all the evidence that could be produced on this issue was produced? I believe, well, I think so. I mean, I don't know what else they could do unless Mr. Leineck, and he said his records were burned up in a fire or flood or something to that effect. So what you're saying to this court is that where all the evidence on this issue has been produced, the court should say that's not sufficient to meet the clear and convincing standard. Is that correct? That's correct, which this court has done on numerous occasions. I mean, it is their obligation. It is presumed valid, and it requires evidence that it was both a printed publication as well as publicly disseminated. That is, it was out there before, just like in Lister, just like in the number of cases, I mean, that have come before. It has to reach both of those thresholds, and in this case, it just simply doesn't. And I think the changing topics, real quickly, with respect to the— Well, you don't have more time except to answer Judge Krieger's question. Am I out? It shows 1.20, but that's probably over at this point. Thank you, Mr. Peterson. We'll take the case under advisement. Thank you.